## Case No. 12,941.

SLEEPER et al. v. PUIG et al.

[17 Blatchf. 36; 8 Reporter, 357.] [1]

Circuit Court, S. D. New York. Aug. 12, 1879. [2]

SHIPPING—DEMURRAGE—DISCHARGE—DISPATCH.

1. A charter-party for the voyage of a vessel from New York to Santa Cruz (Canary Islands), and thence to Havana, Cuba, provided that the respondents were to be allowed, for the loading and discharging of the vessel, "dispatch for loading at New York and discharging at Havana; thirty running days for discharging at Santa Cruz;" and that, if the vessel should be longer detained by the respondents, demurrage, at so much per day, should be paid, day by day, for every day so detained. *Held*, that the customs and rules of the port of Havana were not to control as to the time for discharging there, but that the respondents were bound to take the cargo, at Havana, as rapidly as the vessel could deliver it.

[Cited in O'Rourke v. Tons of Coal, 1 Fed. 621; Lindsay v. Cusimano, 10 Fed. 305; McLeod v. Sixteen Hundred Tons of Nitrate of Soda, 55 Fed. 530.]

2. By the rules of the port the cargo could be delivered only at the mole. The vessel came to anchor and was ready to deliver her cargo. There was no room for her at the mole. She was delayed till room was found. *Held*, that, under the terms of the charter-party, the risk of delay in obtaining a place at the mole, was on the respondents, and not on the vessel.

[Cited in Moody v. Five Hundred Thousand Laths, 2 Fed. 608.]

[Appeal from the district court of the United States for the Southern district of New York.

[This was a libel by Henry J. Sleeper and others against Emilio Puig and Santiago Puig to recover demurrage and a balance due under a charter part. From a decree in favor of libelants (Case No. 12,940), respondents appealed.]

Beebe, Wilcox & Hobbs, for libelants.

Coudert Brothers, for respondents.

BLATCHFORD, Circuit Judge. By the charter-party the vessel was chartered to the respondents for a voyage from New York to Santa Cruz (Canary Islands) and thence to Havana, Cuba. The cargo from Santa Cruz to Havana was to be stone or other lawful merchandise. The charter money was to be $4,000 gold for the round voyage, and the vessel's port charges at the Canary Islands; one half of the charter to be "payable on the discharge of the cargo at Santa Cruz, in cash, or in approved sixty days' bills of ex-

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 8 Reporter. 357, contains only a partial report.]
[2] [Affirming Case No. 12,940.]

change on London, at $4 84 to the pound sterling, charterers' option; balance on delivery of cargo at Havana; free of all commissions." The respondents were to be allowed, for the loading and discharging of the vessel, "dispatch for loading at New York and discharging at Havana; thirty running days for discharging and loading at Santa Cruz;" and, in case the vessel should be longer detained by the respondents or their agents, demurrage was to be paid the vessel's agent at the rate of 35 silver dollars per day, day by day, for every day so detained. It was further provided, that the cargo or cargoes should be delivered alongside, within reach of the vessel's tackles; and that the vessel should "be consigned to charterers' friends at Santa Cruz and Havana, free of commission."

The libel alleges that the vessel took on cargo at Santa Cruz and arrived at Havana; that her master duly reported his readiness to discharge cargo on the 4th of April, 1874; that the agents of the respondents did not give the vessel dispatch in discharging, but neglected to discharge the cargo for 17 days over the necessary lay days, under the terms of the charter-party, so that there became due to the libellants, for demurrage, $672.35; that $212.24 is due to the libellants for balance of freight on the cargo discharged at Havana; and that the libellants paid for the respondents, at Havana, for extra expenses in discharging cargo, $49.26.

The answer sets up that the charter money was fully paid; that, when the vessel arrived at Havana, the consignees of the respondents, as soon as they were notified of her arrival, immediately proceeded to assist her master in procuring a wharf and in unloading the vessel; that, when she arrived, there was no berth unoccupied at the wharf, nor was it possible to procure one; that, by the laws and usages prevailing in the harbor of Havana, the control of wharves and berths, as well as the number of hours per day allowed for the discharge and loading of cargo, is not with the merchants or other private individuals, but with the government officials, who dispose of said matters as they deem proper; that, as soon as it was possible, the said officials provided a proper and suitable berth for the vessel; that the master thereupon proceeded to discharge and was allowed the full and usual number of hours per day wherein to effect said discharge, but, owing to the insufficiency and inability of her crew, the discharge was unusually slow; that thereupon and at the request of the master, the consignees of the cargo supplied him with extra men to enable the crew to discharge more rapidly; that, if there was any delay in unloading the cargo, it did not proceed from any negligence or default of the respondents, or of their consignees or agents; and that the usual dispatch in the port of Havana was used for the unloading of the cargo.

The district court awarded to the libellants $490 for 14 days' demurrage, at $35 per day, and also $120.28 for balance due on charter-party. The respondents have appealed. The only question raised, in this court, is as to the demurrage. The district court held that the word "dispatch," in the charter-party, means, "without delay;" that it does not mean "with diligence," nor does it refer to, nor is it controlled by, any usages, customs or rules of the port; that it is a term that does not need construction by reference to extrinsic circumstances; that a charterer who stipulates for dispatch in discharge takes all risks of being able to effect such discharge; that though, without his fault, as, by reason of stress of weather, ice. the impossibility of obtaining the necessary hands to receive the cargo, or other cause, he is obliged to detain the ship. he must pay the stipulated demurrage; and that the time allowed, by this phrase. for receiving the cargo, is measured by the capacity to deliver it. It is contended for the respondents, that, if such is the correct view, there is no difference between the legal consequences attached to the word "dispatch" and those which follow where a fixed and determined period of time is stated; that the term "dispatch" is to be construed according to the surrounding circumstances; and that there is nothing showing, or tending to show, that the parties ever understood or intended that they should be bound on the one side, or entitled on the other, to any more than diligent efforts on the part of the charterer to discharge as rapidly as circumstances would allow. Attention is called to the fact that the charter-party allows 30 running days for loading and discharging at Santa Cruz, while the expression ' ispatch" is used in reference to loading at New York and discharging at Havana, and from this it is argued, that the respondents did not intend to bind themselves to the same rigid rule which the courts have applied where a determined number of days is stated.

If it had been intended that the customs and rules of the port of Havana should control as to the time for discharging there, it was very easy to have so provided. In the absence of such a provision, and by the use of the word "dispatch," it must be held that the respondents were bound to take the cargo as rapidly as the vessel could deliver it. Keen v. Audenried [Case No. 7,639]; Davis v. Wallace [Id. 3,657]; Thacher v. Boston Gas Light Co. [Id. 13,850]. The court below decided that five working days was a proper and reasonable time for discharging the cargo; that it could have been delivered by the vessel in five working days; and that the vessel was entitled to insist on such dispatch. In these conclusions that court was correct.

The vessel arrived at Havana on Thursday. April 2d. Friday, April 3d. was Good Friday. On Saturday, the 4th, the vessel came to her anchorage, and on the same day she was entered at the custom house, and was reported by the master to the consignees of the respondents, as ready to discharge. The rules of the port required that her cargo should be discharged at the mole. She was not brought up to the mole until the 14th. The mole was crowded with vessels and a place there could not be obtained for her before that day, the custom being to give berths to vessels there in the order of their arrivals, and the assignment of berths being in the control of the captain of the port. The vessel was at anchor in the usual place of anchorage near the mole, where vessels await their turn for discharging at the mole. The respondents' consignee, Morales, to whom also the vessel was consigned, in accordance with the charter-party, testifies, that the vessel was at anchor when he was informed by the master of her arrival, and that the wharf clerk of his house undertook thereupon to procure a berth for her at the wharf. It is contended for the respondents, that their liability for demurrage commenced only when the vessel arrived at the mole; that then, and then only, could delivery be made of the cargo; that the vessel could not be discharged until that time; that the risk in the interval was the master's; and that, until the master placed the respondents' consignees in a position to receive the goods, he could not hold the respondents for demurrage. It was held, by the court below, that the respondents' consignees assumed the entire control of the matter of finding a place for the discharge of the cargo; that they thereby affirmed their duty, under the contract, as they understood it, to take charge of the vessel; that a delay in finding a place to discharge is as much within the mischief sought to be obviated by the requirement of "dispatch for discharging," in the charter-party, as a delay in receiving the cargo after the vessel reaches the wharf; and that the respondents are liable for all delay from the time of the reporting of the vessel at her anchorage near the mole in readiness to deliver her cargo. The obligation of the vessel, by the charter-party, was to deliver the cargo at Havana, and the second half of the charter money was payable on the delivery of the cargo at Havana. The respondents contracted for "dispatch" in discharging at Havana, and for the stipulated demurrage per day, day by day, for every day the vessel should be detained by the respondents or their agents, longer than the time thus provided for. The vessel, from the 4th of April, was at her anchorage ready to deliver her cargo. She did not get aground, or in any manner become disabled or prevented from going to the mole or from delivering her cargo, except by the fact that there was no room for her at the mole. Under these circumstances, and in view of the terms of this charter-party, the risk was on the respondents and not on the vessel, of any delay in

obtaining a place of discharge at the mole. Brown v. Johnson, 10 Mees. & W. 331.

The defence that there was delay in discharging because of the insufficiency and inability of the crew of the vessel is not made out. The discharging of the cargo was not completed until the 24th of April. Of the 20 days from April 4th to April 24th, the district court excluded Sunday, April 5th, and allowed the five days next ensuing for discharging, and charged the respondents with 14 days' demurrage. This was correct. There is no satisfactory evidence that any one of such five days was a holiday or a day on which servile labor was not permitted. For every day from April 10th to April 24th, including the Sundays in that time, the vessel was entitled to demurrage, and the sum awarded, $490, was correct. There is no complaint as to the allowance to the libellants of the items amounting to $120.28.

. The libellants are, therefore, entitled to a decree for $610.28, with interest at 6 per cent. per annum from May 2, 1874 (the date fixed by the court below), and for $75.49, their costs in the district court, and for their costs in this court, to be taxed.