Benedict, D. J.
This action is brought upon a charter-party of the schooner Olive, to recover demurrage for the detention of the schooner while awaiting her turn at the place of loading; also, for detention after she loaded, caused by low tide, and also for detention at the place of discharge.
The charter was made in St. John. It provides that the vessel shall proceed to Point Wolf, N. B., and there load from the charterers a full cargo of laths, and, being so loaded, shall proceed therewith to New York and deliver the same. It also provides for a lien upon the cargo for freight and demurrage, and concludes as follows: “Cargo to be delivered within reach of the vessel’s tackles, with all possible dispatch, at Point Wolf, and to be taken delivery of in like manner,” This special provision, which is in writing, must, of course, control the general provisions of the printed blank. The contrary has not been contended. By this provision the charterers assumed an obligation to designate an unencumbered berth for the loading and discharge of the cargo, (Davis v. Wallace, 3 Clifford, 133; Thatcher v. Boston Gas-Light Co. 2 Lowell, 362,) and to furnish cargo at-the place of loading as fast as it might be possible for the vessel to receive it. *608 Sleeper v. Ping, 8 Rep. 257. Any other construction of the phrase “all possible dispatch” would attach a different meaning to the word dispatch from that given to it by the adjudged cases already referred to, and render inoperative a provision inserted in writing, and manifestly intended to be controlling. The obligation created by this special agreement in regard to loading is not affected by any usage at Point Wolf in regard to awaiting a turn. Keen v. Audenried, 5 Ben. 535; Sleeper v. Ping, 8 Rep. 357. Accordingly, it must be held that the designation by the charterers of a wharf then occupied by a vessel there being loaded by them, whereby the Olive was detained some days before she could come to the berth so designated, was a violation of the agreement, and entitles the vessel to be compensated therefor.
In regard to the detention at Point Wolf after the cargo was on board, and which arose from the circumstance that the vessel was tide-bound, no liability .can attach therefor to the cargo, the evidence showing that diligence on the part of the vessel after she began to load, in taking on board the cargo and in moving from the wharf, would have prevented her being nipped.
In regard to the detention in New York, it must be held in this case, as in a former one, (The Mary E. Taber, 1 Ben. 105,) apparently approved in Thatcher v. The Boston Gas-Light Co. (2 Lowell, 363,) that it was no violation of the agreement on the part of the consignee to name more than one place of discharge for such a cargo as this. The contract, while it calls for an unencumbered berth, does not limit the discharge to a single such berth, where the custom is to deliver cargo of this description at several places. Therefore, while I think the custom was pushed to its extreme limit in the designation of three such places of discharge as Jersey City, Wallabout creek and Gowann’s canal, I cannot say, upon the evidence, that the custom was exceeded. The master having accepted the designation made by the consignee, and having proceeded to those places in compliance with that designation, without objection made at the time, cannot now claim demurrage for the time *609 occupied in reaching those places. The objection made when the vessel had arrived in Gowann’s canal, after having been to Jersey City, and the libellant was too late to permit the consignee to change the place of discharge, affords no support to the claim now made. Davis v. Wallace, 3 Clifford, 133.
In regard to the alleged delay in receiving the cargo as fast as it could have been landed at' those places of discharge, the evidence fails to satisfy me that any detention arose from such a cause. The claim of the libellant must, therefore, be limited to the detention at Point Wolf, caused by the failure to designate an unencumbered berth. The evidence shows this to have been five days, and that $20 per day is fair demur-rage.
Decree for libellant for $100, with interest at 6 per cent., and costs.