MOTT *v.* FROST *et al.*

*(District Court, E. D. South Carolina. July 25, 1891.)*

DEMURRAGE—QUICK DISPATCH—CUSTOM OF PORT.
    Where a charter-party fixes no definite number of lay-days, but provides that they shall commence from the time the master reports himself ready to discharge cargo and guaranties the vessel a suitable berth, and provides for quick dispatch in dis- charging, the charterer is liable for demurrage on the vessel's being detained two days after notice because the only available berth was occupied by another vessel, regardless of the custom of the port allowing 24 hours after notice before commenc- ing to receive cargo.

In Admiralty. For former report see 45 Fed. Rep. 897.
*J. N. Nathans*, for libelant.
*Frank R. Frost*, for respondents.

SIMONTON, J. This libel is for freight and demurrage. There had been short delivery of cargo. Respondents retained $289.08 to meet it. Finding, however, that the vessel was not liable for this, they notified the master of their readiness to pay. The libel being subsequently filed, they, before answering, paid the sum into the registry. This will be treated as a tender. Ben. Adm. 3552. The libel claims demurrage for detention in unloading, owing to the manner of unloading cargo. It was the duty under the charter-party of the vessel to discharge the cargo. The master employed respondents as stevedores. If they were in de- fault, or consumed too much time in unloading, they might be liable to

libelant; but not under the charter-party,—the cause of action in this case. So every question but one is eliminated from the case; that is, the claim of demurrage for delay in beginning to receive cargo. The cargo was fish-scrap, carried from Nantuc, Conn., under charter-party and bill of lading made at Nantuc. The bill of lading required the delivery of cargo at consignees' works up Ashley river. This is four miles from Charleston. The charter-party guarantied to vessel a suitable berth, and also had the following provision:

"It is agreed that the lay-days for loading and discharging shall be as follows, (if not sooner dispatched:) Commencing from the time the captain reports himself ready to receive or discharge cargo, quick dispatch loading and discharging cargo; and that for each day's detention by default of the party of the second part $60.00 per day shall be paid by said party of the second part or agent to said party of the first part or agent."

The vessel got into port 7th March last, (Saturday,) and reported arrival that afternoon or evening to respondents at their office in Charleston. She went up Ashley river the next day, to consignees' works, and on Monday, 9th, at 7 A. M., the master reported to respondents that he was ready to discharge cargo. The only berth at which the schooner would lie at works was filled by a bark, and the schooner lay outside and along-side of her. The bark remained in the berth until Wednesday, 11th, at 9 A. M. At 10 A. M. the schooner got into the berth, and began to discharge. Are respondents liable for the delay of Monday, Tuesday, and the part of Wednesday? The master had performed his part of the contract up to this point. Respondents could not furnish a suitable berth, because they had it in use. This caused the delay. The respondents deny any liability for demurrage, because they say they gave the schooner quick dispatch, unloading her within a reasonable time. As we have seen, it was the duty of the vessel to discharge, of the respondents to receive, cargo. If they did in fact discharge, this was done as stevedores selected by and as agents of the master. As such stevedores they were bound to him to discharge as rapidly as possible, and all the credit for this belongs to their employer, the master. This part of the contract was·fulfilled. So it is clear that, if the berth had been ready for him, he would have saved two days and one-third of a day. In any event, respondents claim that at all events they had, under the custom of this port, 24 hours after notice before commencing to receive cargo, and that Monday could not be charged to them. One witness has spoken of this custom, and upon general principles it is not an unreasonable one. The exact time of arrival of a sailing vessel is always uncertain. Some time is necessary for the consignee to complete his arrangements for procuring a berth, engaging a stevedore, and for receiving and storing cargo. Is this custom included in the terms of this charter-party, or is it excluded by necessary implication? The cargo was not to be delivered "at the port" Charleston, but at a specially designated place,—"the works of consignees up Ashley river" four miles from Charleston. No definite number of lay-days was stated. They began at a time definitely fixed,—the time the captain reports himself

ready to discharge cargo. "Their duration is fixed by the use of quick dispatch." This is the written contract. In *Thacher* v. *Gas-Light Co.*, 2 Low. 361, the words of the charter-party were, "and quick dispatch discharging." Following 'Mr. Justice CLIFFORD in' the case of *Davis* v. *Wallace*, 3 Cliff. 123, the court held that an agreement for quick dispatch overrides any customary mode of discharging vessels by which they take their turn at the wharf. This case also held that when a charter-party named a wharf for discharge it was a warranty that there would be a berth there. *Bjorkquist* v. *Certain Steel Rail Crop Ends*, 3 Fed. Rep. 717, is a case very much like that under discussion. It is a case in this circuit, and it decides that under a charter providing for quick dispatch in discharging the charterer was liable for demurrage when the vessel, from the crowded condition of the port, was delayed in procuring a berth. These cases commend themselves to the judgment of the court. If the delay had been occasioned by circumstances beyond the control of respondents, these would have been taken into the account. They would not have been held to the precise moment of the report. But the schooner was kept out of her berth two days and more, because it was in use by respondents, presumably for their advantage. I am of the opinion that the custom of the port, assuming that this be properly found, does not enter into this contract. Omit the part of a day, and prepare a decree giving libelant two days' demurrage, with costs.