## UREN v. HAGAR et al.

### (District Court, E. D. Pennsylvania. July 13, 1899.)

### No. 37.

1. SHIPPING—CONSTRUCTION OF CHARTER PARTY—PROVISION FOR QUICK DELIVERY.

A provision of a charter for quick delivery on board should be given a reasonable interpretation with reference to the character of the cargo, as well as its destination and the manner of stowage required, in order to facilitate its discharge. A requirement that the cargo shall be delivered as fast as the ship can receive it, does not render the charterer liable for demurrage, because all her hatches are not used at the same time, where the size and weight of the packages and the facilities of the wharf are such as to render such use inconvenient.[1]

2. SAME—TIME FOR LOADING—EXCLUSION OF HOLIDAYS.

The Pennsylvania statute relating to holidays (Act 1893; P. L. 188) does not make them obligatory, and, where it is not shown that the stevedore or men engaged in loading a vessel refused to work on holidays, such days are not to be excluded in computing demurrage.

This was a suit in admiralty by the master of the steamship Cotehele for demurrage.

Convers & Kirlin, for libelant.

Horace L. Cheyney and John F. Lewis, for respondents.

McPHERSON, District Judge. This is an action for demurrage, and presents the single question, for how many days should the rate fixed by the charter be allowed? The respondent admits liability for 12 days, while the libelant's claim is for 25 days. The facts are briefly these: By the charter the respondent undertook to furnish cargo to the steamer as fast as the ship could receive it, the cargo to consist of lawful merchandise, including locomotives and tenders, under and upon the deck. The voyage was to be from Philadelphia to Alexandria, in Egypt, and to Novorossick and to Mariupol, in Russia. The ship was ready to be loaded on the 29th of March, but loading was not completed until the 10th of May. The cargo consisted of brick, structural iron, and locomotives; by far the larger part being the bulky and heavy packages containing the boilers, tenders, and other parts of the locomotives. It is not necessary to detail the evidence. It is clear that the respondent furnished a competent stevedore to load the cargo, and that the work of transferring the cargo from the wharf to the ship proceeded with as much speed as

---

[1] For construction of provision in charter party for "quick dispatch," etc., see section 2 (e) of note to Randall v. Sprague, 21 C. C. A. 342, and see, also, on the same subject, note to Harrison v. Smith, 14 C. C. A. 657.

was possible under the circumstances. The delay, as it seems to me, was due to the fact that the respondent did not bring the cargo to the wharf with sufficient promptness. It is at this point, I think, that he failed in duty. I do not agree with the libelant's position, that the clause already referred to in the charter required the respondent to deliver cargo so that the ship could use all her hatches at the same time. A clause for quick delivery should have the same reasonable interpretation that is given to other clauses of the contract. If a cargo should be of such a description, that the size or weight of the packages would make it very inconvenient to use all the hatches at once, I think such use could not be insisted upon. So, if the facilities at the wharf should be such that only two or three hatches could be used at a time, the respondent could not be held liable for failure to use the fourth. It seems to me, also, that the destination of the cargo is another fact that might properly be considered. In stowing cargo, its destination is to be considered, in order that discharging may take place expeditiously and economically; and it is easy to see that the work of stowing might interfere with the use of some of the hatches.

In considering for how many days demurrage should be allowed, the respondent urges that half holidays should be excluded, and the full holiday of Good Friday. The Pennsylvania statute with regard to holidays has these provisions: Section 1 provides that the holidays and half holidays designated by the act "shall be considered as public holidays and half holidays for all purposes whatsoever as regards the transaction of business"; while section 4 provides that "all the days and half days herein designated as legal holidays shall be regarded as secular or business days for all other purposes than those mentioned in this act." Act 1893 (P. L. 188). Whatever may be the effect of these sections taken together, it is clear that the statute does not make holidays obligatory. One may work or rest on a holiday, as he sees fit. Custom determines largely the degree of observance, and customs differ in different communities. There is no testimony to show that the laborers declined to work upon Saturday afternoon, or upon Good Friday, for the reason that these were holidays, or that the stevedore refused to have work done upon those days for a similar reason. The question, therefore, suggested by the respondent concerning the effect of the statute, does not arise.

It is somewhat difficult to determine what allowance should be made. The truth evidently lies somewhere between the respective claims of the parties, but it is not easy to find it. There is room for a fair difference of estimate, and I cannot feel sure that my estimate is entirely correct; but it is the result of the best consideration that I have been able to give to the subject. My conclusion is that the libelant is entitled to an allowance of 20 days. A decree may be drawn in accordance with this opinion, adding interest and carrying costs.