CARBON SLATE CO. v. ENNIS.

BACON v. SAME.

(Circuit Court of Appeals, Third Circuit. February 24, 1902.)

Nos. 30, 31.

1. SHIPPING—BREACH OF CHARTER—DAMAGES.

The owner is entitled to recover from a charterer the amount necessarily expended by the master in trimming a cargo after loading, made necessary by the fact that the cargo was not in proper condition, or that the ship was loaded at a place where she could not "always lie afloat," as required by the charter.

2. SAME—DEAD FREIGHT.

Under a charter which required the ship to proceed to the port of loading, "or as near as she can safely go," and required the charterer to furnish a full and complete cargo of ore, it was the duty of the latter to deliver the cargo at a place from which the ship could get away after being loaded, and he is liable for dead freight where the ship could not load a full cargo at the berth he assigned her, because of a bar in the harbor which she could not cross, and the master was not requested to stop for further loading after crossing the bar.

3. SAME—CONSTRUCTION OF CHARTER—COMMENCEMENT OF LAY DAYS.

A provision in a charter, "Lay days not to commence to count until 12 o'clock noon after the steamer is entered at the custom house and in every respect ready to load," though negative in form, is positive in effect, and means that the lay days shall commence to count at that time; and where, by a further clause, the ship was required to load "when, where, and as directed" by the charterer, and she was ready on her part, and her master had given the required notice, the lay days commenced to count from the succeeding noon, and the responsibility for a further delay in commencing to load rests upon the charterer, although caused by a custom of the port which compelled her to await her turn to get to the berth assigned her.[1]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 110 Fed. 404.

H. L. Cheyney and John F. Lewis, for appellant.

Ira J. Williams, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. These cases were argued together, and may be disposed of in a single opinion. The question presented is whether the court below erred either in allowing the claims for trimming charges and for dead freight, respectively, or in disallowing those relating to dispatch money.

Respecting the two items first mentioned, we concur in the views expressed and in the conclusions reached by the learned judge of the district court. The respondents were charterers under a charter party which provided that the chartered vessel should proceed to Bilboa, Spain, "and there load when, where, and as directed, in the usual and customary manner, from the charterers' shippers, a full and complete cargo of ore, same to be delivered to her where she can always lie

[1] Demurrage, see note to Randall v. Sprague, 21 C. C. A. 337.

afloat," etc. Notwithstanding this provision, the ore was delivered to her where she could not always lie afloat. Consequently, and because it was in a wet condition, it was necessary to trim cargo; and as the expense incurred in doing this was not occasioned by any default of the master, but by the failure of the shippers to properly deliver, it was rightly held that that expense must be borne by the charterers.

The respondents contend that their obligation to furnish a full and complete cargo was fulfilled because they had a full cargo ready for shipment, and this position would be impregnable if certain other provisions of the charter party and the particular facts of the case were not to be regarded. But the contract was, in legal effect, that the vessel should proceed to Bilboa, or as near as she could safely get, and when loaded get away from, in order to proceed to the port of Philadelphia (Shields v. Wilkins, 5 Exch. 304); and the fact is that she was directed to load at a berth where a full cargo, if taken aboard, would have made it impossible for her, at any stage of water or at any time, to pass out over the harbor bar. The suggestion now made that the master should have detained the vessel outside the bar for reception of the balance of the ore is without force. He was not asked to do so, and it is quite evident that the shippers did not contemplate any delivery of cargo elsewhere than at the "tip." The district court was therefore right in deciding that nothing had been shown to excuse the nonperformance by the charterers of their express undertaking to furnish a full cargo, and in accordingly sustaining the libelant's demand for compensation by way of dead freight upon the difference between what would have been a complete cargo and the partial one which was actually put on board.

We are unable to adopt the construction which was put by the court below on that clause of the charter party which concerns lay days. In our opinion, the phrase, "lay days not to commence to count until twelve o'clock noon after the steamer is entered at custom house and in every respect ready to load," etc., though negative in form, is positive in effect. It means that they shall commence to count at that time, but not before. It does not mean that they shall not be counted before that time, but may not commence even then. When the steamer had been entered and was ready to load, and the stipulated notice had been given, all had been done which she was required to do. It then became the duty of the shippers to promptly load her, subject only to the provision by which they were allowed till 12 o'clock noon thereafter for the commencement of lay days. The ship's readiness to receive the cargo "from the charterers' shippers" was not dependent upon their readiness to assign her a berth. So long as this was not done, she was detained in waiting, not by any lack of readiness on her part, but by the unreadiness of the shippers, and therefore they, and not the master, were responsible for the consequent delay in loading her. It was not for him to obtain a berth, for the charter party expressly required him to load "when, where, and as directed." Upon reaching the harbor the arrival of the ship was complete, and, while it was the duty of the master to then make the vessel ready to receive cargo, the designation of a place for its reception was, as we read the contract, as clearly incumbent upon the shippers as was

preparedness to make delivery at some point within the port of Bilboa. Gronstadt v. Witthoff (D. C.) 15 Fed. 265. If, as is contended, the delay in question was caused by a custom of the port that each vessel should await its turn to obtain a wharf, that fact could not relieve the charterers from their positive engagement as to the time at which the lay days would commence to count. It is true that an incident not expressly mentioned may be by custom annexed to a contract, unless the annexing of such incident would be repugnant to, or inconsistent with, its terms, and this rule applies to a charter party as well as to other contracts; but it does not derogate from the right of the contracting parties to themselves agree by which of them any burden imposed by custom shall be borne. Therefore, as in this instance the contract, as we construe it, was that the lay days should commence at 12 o'clock noon, etc., it cannot, consistently with its terms, be held that the time for their commencement was not fixed, but was left open for future and contingent determination. Davis v. Wallace, 3 Cliff. 123, Fed. Cas. No. 3,657; Sleeper v. Puig, 17 Blatchf. 36, Fed. Cas. No. 12,941; Keen v. Audenried, 5 Ben. 535, Fed. Cas. No. 7,639; Moody v. Five Hundred Thousand Laths (D. C.) 2 Fed. 607; Mott v. Frost (D. C.) 47 Fed. 82. Nor is the clause directly under consideration at all qualified by the distinct provision that the ship was to load "in the usual and customary manner." These words do not apply to the time to be taken in loading, but only to the manner of loading. Davis v. Wallace, supra; Dunlop v. Balfour [1892] 1 Q. B. 520.

Solely upon the ground that its disallowance of the claims respecting dispatch money was erroneous, the decrees of the district court are reversed, and the causes designated at the head of this opinion will be remanded to that court for further proceedings to be there taken in pursuance of this determination.