HOLLAND GULF STEAMSHIPPING CO. v. HAGAR.

(District Court, E. D. Pennsylvania. July 20, 1903.)

No. 57.

1. SHIPPING—DEMURRAGE—SETTLEMENT OF CLAIMS.

The acceptance by a master of demurrage under protest leaves the settlement of the amount rightfully due an open question, and the owner is entitled to urge his claim in accordance with his own views, without regard to the grounds of the master's protest.

2. SAME—TIME FOR LOADING—EXCLUSION OF HOLIDAYS.

The Pennsylvania statute relating to holidays and half holidays does not make them obligatory, and where it is not shown that the stevedores engaged in loading a vessel refused to work on Saturday afternoons because of the statute such half days are not to be excluded in computing demurrage.

In Admiralty. Suit against charterer for demurrage.

Convers & Kirlin, for libelant.

Henry R. Edmunds, for respondent.

J. B. McPHERSON, District Judge. Early in February, 1900, Barker & McCall, the Philadelphia agents of the libelant, entered into

¶ 1. General principles of demurrage, see notes to Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.

¶ 2. Quick despatch, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 342.

an agreement whereby the respondent chartered the Dutch steamship Wilhelmina, of 2791 tons net register, for a voyage from Philadelphia to Vladivostok. Among other items of the charter party, it was provided as follows:

"Steamer to be loaded and stowed at charterer's risk and expense. * * * Twenty weather working days, viz., Sundays, holidays, and bad weather days, excepted, allowed for loading. * * * Lay days for loading not to commence to count before March 1, 1900. * * * Demurrage, if any, 4d per net register ton per day (or $226.37). * * * Stowage of deck load to be approved by Lloyd's surveyor."

The ship arrived in Philadelphia late in February, and was tendered to the respondent on March 1st. It is agreed, however, that the lay days did not begin to run until March 2d, and also that the loading was not finished until April 9th. The respondent did not deny that demurrage to some amount had accrued, and paid the master the stipulated rate for six and a half days. The libelant's present claim is for five days additional, and to this the respondent sets up two defenses: First, that a full settlement was made by the master on a basis of six and a half days only; and, second, that a due allowance for half holidays and for bad weather shows the claim to be unfounded.

The first defense is not supported by the evidence. There is no doubt that the ship's agents, Barker & McCall, rendered bills to the respondent for six and a half days' demurrage, or $1,472.15, and that the master accepted this sum before the vessel sailed. It may be, also, that the master intended to acquiesce in the respondent's contention concerning the allowance of half holidays; and if he had attempted to make a settlement in full on this basis, and had formally discharged the respondent from further liability for demurrage, the question suggested by the libelant would arise, whether the master had exceeded his authority in surrendering part of a valid claim without consideration and without communicating with his owners. But he made no such settlement. No doubt he took the money for six and a half days' demurrage, but it is clear that he did not intend to receive it as payment in full of the libelant's claim; for on March 31st he made a formal protest before a notary concerning what he regarded as the improper stowage of the ship, and also "against all delays in consequence of misunderstanding as to commencement of lay days with respect to the question of demurrage." This was followed by another protest on April 9th "against settlement of demurrage upon basis of lay days not commencing before March 1, 1900 (as expressed in charter party), as this condition was not agreed to by owners. The acceptance of charterer's (W. F. Hagar & Co.) settlement is therefore received under protest, and is but a temporary arrangement made without prejudice to the owners' rights in the premises, in accordance with which final settlement is subsequently to be made." Notice of both these protests was duly received by the respondent. It seems clear to me, therefore, that, while the master's expressed reasons for protesting are not the reasons now advanced by the libelant in support of its claim, the result of the master's action (no matter what may have influenced him) was to leave the settlement of demurrage an open question, upon which the libelant was therefore at liberty to urge its own

views, as is now being done, without regard to the views that the master may have previously entertained.

This brings me to the second defense, viz., that in any event the proper demurrage has already been allowed and paid for. I have considered the evidence on this point, and am of opinion that the following table, prepared by libelant's counsel, correctly states the facts, and establishes the validity of the claim:

| Date. 1903. | Lay Days. | Bad Weather Days. | Demurrage. Days. |
|---|---|---|---|
| Thursday, March 1 | .... | 1 | .... |
| Friday, March 2 | 1 | .... | .... |
| Saturday, March 3 | 1 | .... | .... |
| Sunday, March 4 | .... | .... | .... |
| Monday, March 5 | 1 | .... | .... |
| Tuesday, March 6 | .... | 1 | .... |
| Wednesday, March 7 | 1 | .... | .... |
| Thursday, March 8 | 1 | .... | .... |
| Friday, March 9 | 1 | .... | .... |
| Saturday, March 10 | 1 | .... | .... |
| Sunday, March 11 | .... | .... | .... |
| Monday, March 12 | 1 | .... | .... |
| Tuesday, March 13 | 1 | .... | .... |
| Wednesday, March 14 | 1 | .... | .... |
| Thursday, March 15 | .... | 1 | .... |
| Friday, March 16 | ½ | ½ | .... |
| Saturday, March 17 | 1 | .... | .... |
| Sunday, March 18 | .... | .... | .... |
| Monday, March 19 | 1 | .... | .... |
| Tuesday, March 20 | 1 | .... | .... |
| Wednesday, March 21 | 1 | .... | .... |
| Thursday, March 22 | 1 | .... | .... |
| Friday, March 23 | 1 | .... | .... |
| Saturday, March 24 | 1 | .... | .... |
| Sunday, March 25 | .... | .... | .... |
| Monday, March 26 | .... | 1 | .... |
| Tuesday, March 27 | 1 | .... | .... |
| Wednesday, March 28 | 1 | .... | .... |
| Thursday, March 29 | ½ | .... | ½ |
| Friday, March 30 | .... | .... | 1 |
| Saturday, March 31 | .... | .... | 1 |
| Sunday, April 1 | .... | .... | 1 |
| Monday, April 2 | .... | .... | 1 |
| Tuesday, April 3 | .... | .... | 1 |
| Wednesday, April 4 | .... | .... | 1 |
| Thursday, April 5 | .... | .... | 1 |
| Friday, April 6 | .... | .... | 1 |
| Saturday, April 7 | .... | .... | 1 |
| Sunday, April 8 | .... | .... | 1 |
| Monday, April 9 | .... | .... | 1 |
| Total lay days | 20 | 4½ | |
| Total demurrage days | | | 11½ |
| Demurrage days paid | | | 6½ |
| Demurrage remaining due | | | 5 days. |

The respondent's contention that Saturday afternoon is a half holiday, both by the custom of the port and by the Pennsylvania statute of 1893, has not been made good. The statute does not oblige men

to be idle on Saturday afternoon, and there is no evidence that in this particular case the stevedores refused to work because of the state law on this subject. Uren v. Hagar (D. C.) 95 Fed. 493. If it be the custom of the port to treat this part of Saturday as a half holiday, so that all persons concerned are bound to take notice of that fact, I can only say that the custom was not proved by evidence of the proper quantity and quality. Neither is there any evidence establishing a custom to except the day of clearing (April 9th) from the count of demurrage days, even if the testimony did not show that this day was largely occupied by the charterers in stowing the deck load to the approval of Lloyd's surveyor, as they were bound to do. The only allusion to a custom concerning the day of clearing is found in a letter written by Barker & McCall to the respondent in July, 1901, more than a year after the transaction now in controversy, and I think it is not necessary to discuss the legal proposition that this letter is incompetent, both as hearsay and as the declaration of an agent made after the agency had apparently come to an end.

The libelant is entitled to a decree for five days' demurrage, with costs.