SWAN et al. v. WILEY, HARKER & CAMP CO.

(Circuit Court of Appeals, Second Circuit. March 10, 1908.)

No. 159.

SHIPPING—CHARTER PARTY—DEMURRAGE.

Under a charter party requiring the charterer to discharge the vessel at New York with "customary dispatch" the lay days for discharging began to run when the vessel reached the berth designated by the charterer, although she was obliged to wait her turn to enter, there being no proof of any custom of the port to require her to wait her turn or that the charterer should be allowed any particular time in case the berth was full.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 582.

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

Appeal from the District Court of the United States for the Southern District of New York.

Hyland & Zabriskie (Nelson Zabriskie, of counsel), for appellants.

Wing, Putman & Burlingham (James Forrester, of counsel), for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is a libel for demurrage by the owners of the barkentine Herbert Fuller against the charterers. The charter party, made between the master of the first part and the charterers of the second part, contains the following clause:

"It is agreed that the lay days for loading and discharging shall be as follows (if not sooner dispatched), commencing from the time the vessel is ready to receive or discharge cargo. For loading, thirty-five thousand feet per day, Sundays and holidays excepted and customary dispatch discharging, and that for each and every day's detention by default of the said party of the second part or agent $69.70/100 dollars per day, day by day, shall be paid by the said party of the second part, or agent, to the said party of the first part, or agent."

We are saved the necessity of inquiring what is customary dispatch in discharging by the admission in the answer that it is at the rate of 35,000 feet per day, which would make the time for discharging, having reference to the amount of lumber carried, 15½ days. Nothing is said about excepting Sundays and holidays, but the parties appear to have acted on the theory that they should be excepted during the running of the lay days. The effect of the provision in the charter party is that the charterer agrees to receive the cargo as delivered within reach of the vessel's tackles within the period of 15½ days, and

that he will pay demurrage day by day for any delay beyond that time, caused by his own default. Carver on Carriage of Goods by Sea, § 608.

The first question is, when was the vessel ready to discharge cargo so that the lay days began to run? Was it on March 10th, when she was ready to go into her berth had it been clear, as the libelant contends, or March 14th, when she actually did get in, as the respondents claim? March 8th the vessel arrived at Red Hook,. reported, and was ordered to a slip at 149th street, Harlem. She proceeded the next day to that place, but was obliged to lie outside another vessel at the bulkhead until March 14th before she could get into her berth. Although the vessel only undertook to deliver at the port of New York, no particular place being named, still it was her duty to discharge at such a berth as the charterer might designate. It was likewise the duty of the charterer to name a proper berth—that is, one into which she could get—and, if delay was caused by its not doing so, the loss should fall upon it. No custom was proved that a vessel should wait her turn if the berth were full, or that any particular time should be allowed the charterer in that case, and the weight of testimony on that subject is against the existence of any such custom. For these reasons we think the lay days began to run March 10th.

The charterer was entitled to 15½ days, Sundays and holidays, upon the apparent understanding of the parties, being excepted, before incurring any liability for demurrage. The District Judge found that the discharge was delayed during the running of the lay days by the blocking of the wharf, but held that the vessel was not at fault on this account, so that no further consideration need be given the subject. In addition to the exception of Sundays and holidays, he gave the charterer the benefit of time lost by bad weather (although nothing was written or said about such exception) five days in all, making the lay days terminate in the first half of March 31st. From that time the charterers' liability for demurrage began. The discharge continued uninterrupted either by bad weather or by blocking of the wharf until April 8th, and the libelant was rightly awarded demurrage for each of these days.

The decree is affirmed, with interest and costs.