RONEY v. CHASE, TALBOT & CO.

(Circuit Court of Appeals, Second Circuit.   April 14, 1908.)

No. 229.

SHIPPING—DEMURRAGE—LIABILITY OF SHIPPER.

Where a contract of affreightment required a vessel only to deliver the cargo at the port of New York, although it contained no specific provision for demurrage, she is entitled to recover damages in the nature of demurrage for delay resulting from her being ordered by the cargo owner to discharge at a berth, which she could not then reach, because of dredging work being done by the government.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 576. Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 160 Fed. 268.

E. L. Owen, for appellant.

Hagen, Goodrich & Coughlan, for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge.  The libel in this case was filed for freight, $98.84, and as amended, for demurrage of $232.  The district judge allowed the freight only.

There was no charter, and the bill of lading contained no provision as to lay days or demurrage.  But the second article of the libel charged as a part of the contract:

"That the lay days should be at the rate of 20,000 feet per day (Sundays and holidays excepted) after 48 hours for orders, after which demurrage at the rate of 10 cents per registered ton per day for vessels under 250 tons register."

The answer admitted these allegations.  At the trial the respondent asked leave to amend the answer as follows:

"The respondent admits the allegations of the second article of the libel, except that he denies that it was a specific contract between the parties that the rate of discharge should be as named in the second article of the libel, and alleges that there was no written agreement as to the discharge of the vessel; but that the rates named in the second article of the libel are the customary rates of discharge in New York, by which the respondent is bound."

The court refused to permit this amendment, and the respondent duly excepted.  It was also stipulated that the vessel was of 232 tons net register, and carried 202,791 feet of lumber; that the proper charge for demurrage was $23.20 per day; that she should have been discharged June 17, at 10 a. m., but was not discharged until June 26, at 6 p. m.  The proof showed that of this delay of 10 days 1½ days were due to the refusal of the vessel's stevedores to work, and the remaining 8½ days to dredging in Gowanus Canal by public authority, which prevented the vessel from getting to the wharf to which the respondent ordered her.

We think the respondent is bound by its admissions in the pleadings, and in the case which established a contract to receive the cargo within the time fixed, and therefore left all delays, not excepted nor caused by the vessel, at the respondent's risk. Adopting, however, the contention of the respondent that the amendment to the answer should have been allowed, and that, having made no contract to pay demurrage, it was only liable to pay for delay caused by its default, we still think the libelant was entitled to recover damages in the nature of demurrage for 8½ days' delay.

The respondent relies upon the fifth conclusion of the Circuit Court of Appeals for the Eighth Circuit, in the case of the Empire Transportation Company v. Philadelphia & Reading Coal & Iron Company, 77 Fed. 919, 925, 23 C. C. A. 564, 35 L. R. A. 623:

"(5) Proof that the vessel was delayed in unloading beyond the customary time for unloading such cargoes at the port of her delivery throws upon the charterer the burden of excusing the delay, by proof of the actual circumstances of the delivery and his reasonable diligence thereunder."

The proofs showing that there was a delay of 8½ days beyond the customary time for unloading, the consignee justifies it by saying that the delay was caused by dredging of the public authorities in the canal. The bill of lading only required the vessel to deliver to the respondent or assigns in the port of New York, and although it was her duty to discharge, at the wharf to be designated by the respondent, it was equally its duty to order the vessel to a wharf where she could get. If the bill of lading had required delivery at the wharf to which the vessel was subsequently ordered, or if there were no other wharf in the port at which she could be discharged, the delay would have been at the risk of the vessel, but, this not being the case, the delay was caused by the order which the respondent gave. There was nothing unforeseen or extraordinary about the dredging, nor anything that affected the port or the trade generally. It was open and notorious. The fact that the respondent had previously sold the cargo to be delivered at this wharf without knowing of the dredging being done in the canal is no reason for throwing on the vessel the delay of getting there.

The decree is reversed, and the cause remanded to the District Court, with instructions to enter a decree for the libelant in the sum of $98.84 freight, and $197.20 demurrage, with interest from June 27, 1907, and costs.