HOLMAN v. GANS S. S. LINE.

(Circuit Court of Appeals, Second Circuit. March 13, 1911.)

No. 215.

1. SHIPPING (§§ 45, 47*)—CHARTER PARTY—OBLIGATION OF SHIPOWNER.
   In the absence of any provision on the subject in a charter party, the shipowner must load and unload cargo at his own expense.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 177–183; Dec. Dig. §§ 45, 47.*]

2. SHIPPING (§ 181*)—CHARTER PARTY—CONSTRUCTION—LAY DAYS.
   Under a charter party stipulating that lay days shall count according to the custom of port, and that 20 running days, Sundays and holidays excepted, shall be allowed for loading and discharging, the holiday time, as fixed by the statute of port of loading, making Saturday afternoon a holiday, will not be included in the running days.
   [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 181.*]

3. SHIPPING (§ 172*)—CHARTER PARTY—CONSTRUCTION—CUSTOM.
   An agreement of an owner in a charter party to load cargo according to custom of port is not governed by the custom of port as to time of loading, where the charter party allows a specified number of running lay days, Sundays and holidays, even if used, excluded, for loading.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 569; Dec. Dig. 172.*]

4. SHIPPING (§ 181*)—CHARTER PARTY—RIGHTS OF PARTIES.
   A charter party provided for loading or discharging according to custom of port, and allowed 20 running days, Sundays and holidays excepted, for loading and discharging. A statement of the lay days used in loading was submitted to the master by the charterer, which concluded with the words, "November 14, steamer cleared; does not count according to custom of port." The master signed the statement, adding, "Written under protest, on account of Saturday being counted a half day." He testified that all he knew about the custom as to clearance day was derived from the agents of the charterer. Held, that the failure to protest as to the date of clearance did not conclude the owner's contract rights.
   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 589–592; Dec. Dig. § 181.*]

5. SHIPPING (§ 177*)—CONTRACTS—CONSTRUCTION.
   Under a charter party providing for lay days to begin running at the port of loading on the day following the receipt of the captain's written notice of readiness, accompanied by a surveyor's certificate, but containing no provision as to notice at the port of discharge, the charterer's contention that it was not required to unload until the day following the receipt of notice of readiness, which could not be given on a holiday, was not sustainable.
   [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 177.*]

6. SHIPPING (§ 181*)—CONTRACTS—STATUTES—EFFECT.
   A charter party providing for the allowance of a designated number of running days, Sundays and holidays excepted, for loading and discharging, is not affected by a statute of the country of the port of discharge, which provides that lay days begin to run from second weekday morning after notice has been given on a Sunday or holiday.
   [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 181.*]

Appeal from the District Court of the United States for the Southern District of New York.

Libel by R. H. Holman against the Gans Steamship Line. From a decree for libelant, defendant appeals. Affirmed.

Wheeler, Cortis & Haight (Charles S. Haight and John W. Griffin, of counsel), for appellant.

John M. Woolsey and J. Parker Kirlin, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This cause arose out of a voyage charter of the steamer Birchtor. The libelant, who is the owner, claimed to recover of the charterer 4¾ days' demurrage, and also the amount of 1 day's dispatch money wrongfully deducted from the hire. The relevant parts of the charter party are:

"(1) That the said steamship being tight, staunch, and strong and in every way fitted for the voyage, * * * New Orleans or Galveston, as ordered at St. Lucia, and there load (orders to be waiting steamer at St. Lucia or lay days to count), according to custom of port, a full and complete cargo of wheat and/or maize, and/or other lawful merchandise, * * * and being so loaded shall therewith proceed, as ordered when signing bills of lading, to one, two, or three safe ports in Denmark, or so near thereunto as she may safely get, and there, always afloat, deliver the cargo as customary, at such wharf, dock, or other safe place as charterer's agents may direct on arrival. * * *"

"(7) Charterers to have the privilege of designating wharves or other safe places for loading or discharging. The cargo to be brought to and taken from alongside the steamer at merchants' risk and expense. Steamer to supply steam and winchmen to drive winches and to give use of necessary gear, also to load or discharge at night, on Sundays or holidays, or on day when notice is given if required by charterers, such time not counting; charterers paying all extra expenses and labor incurred, including the overtime of winchmen."

"(9) Charterers are to load, stow, and trim the cargo at their own expense, under the direction of the master, but they shall not be responsible for improper stowage. * * *"

"(14) Lay days at port of loading are not to count before the 25th October, 1907, next, unless with charterer's written consent, and to commence on the day following receipt by the charterer's agents of captain's written notice of readiness, accompanied by surveyor's certificate. * * *"

"(15) If the steamer be not sooner dispatched, 20 running days, Sundays, and holidays excepted, shall be allowed the charterers for loading and discharging. Should the cargo not be delivered to vessel at loading ports and/or discharged at port of destination within the specified time, for each and every day over and above said lay days charterers are to pay, day by day, the sum of four pence per net register ton per day demurrage; any detention through quarantine to vessel or cargo not to count in lay days. If sooner dispatched, steamer to pay £10 for each day saved."

In this court the dispute is as to three days only, viz.: Whether Saturday, being a half holiday at New Orleans, is to be counted as a whole or as only half a lay day; whether, as the vessel cleared on her last loading day, that day is to be excluded as a lay day in accordance with the custom of the port; whether January 2d at Aarhus was a lay day: and, finally, whether the deduction of one day's dispatch money was justified. The District Judge held with the charterer that the two Saturdays at New Orleans were half lay days, and with the owner that the day of clearance at New Orleans and January 2d at Aarhus were lay days, and that, all the lay days having been used, no dispatch money was earned by the charterer.

186 F.—7

[1.] First. In the absence of any provision on the subject, the shipowner must load and unload cargo at his own expense. This charter provided (article 9) that the charterer was to load and unload at its expense, and (article 7) that it might do so at night, on Sunday, or holidays, or a day when notice was given, such time not to count in the lay days.

[2] By statute Saturday in cities in Louisiana having over 15,000 inhabitants from noon to midnight is a holiday, although work may be done on it. The charterer did load all day on the two Saturdays in question, but the District Judge held that it was chargeable only with one day. . The shipowner argues that the exception in the charter, being only of holidays, does not apply to half holidays; but we think this construction too narrow. We understand the provision as meaning that holiday time is not to be included. The authorities relied on by the libelant are consistent with this view. In the case of The Cyprus (C. C.) 20 Fed. 144, it is to be inferred that the charterers began to deliver cargo December 7th, before the ship was completely ready to receive cargo. As they did this voluntarily, it was held, although lay days were not to begin until the ship was ready, that they were estopped to deny that the lay days began December 7th. The decision proceeds upon the same principle as that in The Katy [1895] Prob. Div. 56, that the parties, having agreed to begin unloading on a Saturday at 1 p. m. must be understood as agreeing that the lay days began then, although the charterer was not obliged to receive cargo before Monday. Uren v. Hagar (D. C.) 95 Fed. 493, and Holland Gulf S. S. Co., Ltd., v. Hagar (D. C.) 124 Fed. 460, in which a Saturday on which work was done was held to be included in lay days, depend upon the statute of Pennsylvania of May 31, 1893 (P. L. 188). It is entitled:

"An act designating the days and half days to be observed as legal holidays and for the payment, acceptance and protesting of bills, notes, drafts, checks and other negotiable paper on such days."

Section 1 provides that the days and half days mentioned—

"shall for all purposes whatever as regards the presenting for payment or acceptance and as regards the protesting and giving notice of the dishonor of bills of exchange, checks, drafts and promissory notes made after the passage of this act be treated and considered as the first day of the week, commonly called Sunday and as public holidays and half holidays."

Section 4 provides:

"That all the days and half days herein designated as legal holidays shall be regarded as secular or business days for all other purposes than those mentioned in this act."

It would seem as if Saturday were a business day, except as regards negotiable paper. At all events, the reasoning of the court in these cases does not apply to the charter under consideration, which provides that, even though holidays be used in loading or discharging, they are not to count as lay days. We think the ruling of the District Judge was right.

[3] Second. The owner agreed to load a cargo "according to custom of port." It was shown that according to the custom of the port

of New Orleans, if the ship be cleared on the last loading day, it is not treated as a lay day. This clause as to custom has been held to apply only to the manner of loading. Davis v. Wallace, 3 Cliff. 123, Fed. Cas. No. 3,657; Carbon Slate Co. v. Ennis, 114 Fed. 260, 52 C. C. A. 146. The District Judge held that, even conceding it to contemplate also the time of loading, the custom would not apply, on the principle "expressio unius est exclusio alterius," because the charter allowed 20 running lay days, Sundays and holidays only excepted. We concur with him. The Cyprus, supra; James v. Brophy, 71 Fed. 310, 18 C. C. A. 49; Carbon Slate Co. v. Ennis, supra.

[4] A statement of the lay days used was submitted to the master by the charterer, which concluded with the words:

"November 14, steamer cleared; does not count according to custom of port."

This statement the master signed, adding:

"Written under protest on account of Saturday being counted a half day."

He testified that all he knew about the custom as to clearance day was derived from the agents of the charterer, who told him that they had just fought the question out with the Elder Dempster Line and had won the case. Under the circumstances we do not think his failure to protest as to the day of clearance concluded the owner's contract rights.

[5] Third. The steamer arrived at Aarhus December 31st after midnight, and gave notice of readiness to unload on January 1st, which was a public holiday. The charterer contends that it was not obliged to unload until the second day thereafter, because it was not required to unload until the day following the receipt of notice of readiness, which could not be given on a holiday. There is nothing to this effect in the charter, which only provides for lay days to begin running at the port of loading on the day following the receipt of the captain's written notice of readiness, accompanied by surveyor's certificate. There was no provision as to notice at the ports of discharge.

[6] The charterer also relies on statutes of Denmark which provide that:

"Lay days begin to run * * * from second weekday morning after notice has been given * * * on a Sunday or a holiday."

The District Judge rightly held that this statute is not to be understood as varying the contract of the parties, which was for running—that is, consecutive—lay days. But as the libel admits that December 19th was not a lay day, apparently on the theory that one day's notice of readiness to discharge was required, and also that one-fourth of December 24th was not to be treated as a lay day, the decree of the court below is affirmed, with interest and costs.