THE EDWARD T. STOTESBURY.

(Circuit Court of Appeals, Second Circuit. April 10, 1911.)

No. 232.

1. SHIPPING (§ 181*)—DEMURRAGE—LAY DAYS FOR DISCHARGING.
    Where by the terms of a charter party the charterer is to name the berth for discharging, he should be ready to receive the cargo when the vessel is ready to deliver, even if she cannot do so, either because he has not named the berth, or because he has named a berth to which she cannot get, or to which she is prevented from getting through no fault of hers.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 589-592; Dec. Dig. § 181.*

    Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

2. SHIPPING (§ 181*)—DEMURRAGE—LAY DAYS FOR DISCHARGING.
    Where a charter party required delivery of the cargo of lumber at the port of New York, and provided that the lay days for discharging were to begin when "captain reports his vessel ready to discharge cargo in New York Harbor," he may give the notice when ready in such harbor, notwithstanding a further provision that the charterer shall pay towage from mouth of Newtown creek and return, which does not bind the charterer to have her discharge at a berth in such creek, but merely gives him the option to do so.

    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 589-592; Dec. Dig. § 181.*]

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Frederick R. Eaton against a cargo of lumber laden on board the schooner Edward T. Stotesbury; McGowan Lumber & Export Company, claimant. Decree (180 Fed. 513) for claimant, and libelant appeals. Reversed.

Henry W. Goodrich, for appellant.

Solomon C. Whitbeck (Martin A. Ryan, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. In this case the owners of the schooner Edward T. Stotesbury filed a libel against the cargo of lumber lately laden aboard of her to recover demurrage for 5⅛ days. The charter provided for a voyage with a cargo of lumber from Mobile to the port of New York The material provisions are as follows:

"It is agreed that the lay days shall be as follows: * * * For discharging not less than 60,000 feet per running day, Sundays and legal holidays excepted, commencing from the time the captain reports his vessel ready to discharge cargo in New York Harbor, time consumed in shifting vessel to count as lay days. At port of discharge charterer to furnish suitable berths where vessel can lay to load or discharge safely. And that for each and every day's detention by default of said party of the second part or agent one hundred and twenty-seven and $70/100$ dollars ($127.70) per day, day by day, shall be paid by said party of the second part, or agent, to said party of the first part, or agent. * * * Vessel to move to such loading and discharging berths as charterers may direct where she can always lie safely. They have the privilege of moving her thereafter by paying towages and expenses. * * * Charterers to pay towing mouth of Newtown creek to Cross, Austin & I. L. Co. and return."

The schooner arrived January 19, 1909, in New York Harbor, and anchored at Stapleton, Staten Island, at 2 a. m. The master reported readiness to discharge to the charterers, McGowan Lumber & Export Company, at 10 a. m. of that day, received orders for the Cross dock in Newtown creek, and towed up to the mouth of the creek that day at 1 p. m. January 20th the charterers supplied a towboat to proceed up the creek, but the schooner took the ground at 9:30 a. m., and lay aground until 9 a. m. of the 21st, when the schooner was brought to the dock, but not to her berth. January 30th she got partially into her berth and began discharging, and from that time down to February 11th at 4 p. m. the cargo was discharged at more than the amount of 60,000 feet per day.

The libelant calculates that there were 16⅖ lay days, by dividing the total number of feet of lumber by 60,000. He makes them begin to run from the time the master gave notice of readiness to discharge, viz., January 20th at 10 a. m., and end on February 6th, at 1 p. m. The five days and three hours thereafter used in discharging are the days for which demurrage is claimed.

[1] If under a charter the vessel is to choose the berth for discharge, or if the berth is named in the charter, or if there is only one place in the port at which the cargo can be discharged, or if the berth must be named by the public authorities, we think the lay days do

not begin until the vessel is actually ready to discharge at such point. When, however, the charterer is to name the berth, he should be ready to receive the cargo when the vessel is ready to deliver, even if she cannot do so, either because he has not named the berth, or because he has named a berth to which she cannot get, or to which she is prevented from getting through no fault of hers. Carbon Slate Co. v. Ennis, 114 Fed. 260, 52 C. C. A. 146; Roney v. Chase, Talbot & Co., 161 Fed. 309, 88 C. C. A. 389; Swan v. Wiley, 161 Fed. 905, 88 C. C. A. 510.

[2] The charter in this case called for delivery at New York, and the bills of lading at the port of New York; and the charter also provided that lay days were to begin when "captain reports his vessel ready to discharge cargo in New York Harbor," not at any particular point in New York Harbor. The charterer was given the right to name berths for discharge at which schooner could lie to discharge safely. It is true that it contained a provision, "Charterers to pay towing mouth of Newtown creek to Cross, Austin & I. L. Co. and return," from which it was to be inferred that the schooner might be ordered to discharge at that berth. But this provision was evidently for the benefit of the vessel. The charterer might have ordered her anywhere else, and even if the holder of the bill of lading had intended the lumber for the Cross wharf, he might have sold it to other parties who would want delivery elsewhere. The lay days were to be running days, Sundays and holidays only excluded. Of course, time lost through the vessel's fault should be deducted, and if it appeared that the grounding in Newtown creek was due to the negligence of the tug, which was under the control of the master of the schooner, that day should be excluded. Smith v. Lee, 66 Fed. 344, 13 C. C. A. 506. But there is no such evidence.

The decree is reversed, and the court below instructed to enter a decree in favor of the libelant for 5⅛ days demurrage, with interest and costs.