## THE BELLOTA.
## UNITED STATES v. INTERNATIONAL AGRICULTURAL CORPORATION.

District Court, S. D. New York.
Feb. 17, 1928.

Charles H. Tuttle, U. S. Atty., of New York City (Harold F. Birnbaum, Sp. Asst. to U. S. Atty., of New York City, of counsel), for the United States.

White & Case, of New York City (David Paine, of New York City, of counsel), for respondent.

HAZEL, District Judge.

In this case the United States, the owner, through the Shipping Board, of the steamship Bellota, chartered by respondent, seeks to recover $4,000 demurrage from respondent. The cargo consisted of phosphate rock, and the transportation was from Port Tampa to Wilmington, N. C., in March, 1920.

The material facts are undisputed. The records and arguments submitted present two questions for decision, the first relating to the time when the steamer Bellota was ready to receive her cargo. Is libelant entitled to recover demurrage from the time the vessel arrived in port for loading, or only from the time she reached the berth where she was to be loaded? This question broadly stated may safely be answered in the affirmative on the authority of numerous decisions. The evidence shows that, when the steamship Bellota arrived at Port Tampa, she gave proper notice to the agent, who had charge of berthing vessels at the loading dock, that she was ready to receive cargo, but delay ensued because of other vessels then loading in each of the available berths. She had to wait at an adjacent dock, though fit and seaworthy, I find, to carry out the provisions of the charter. She was in no sense responsible for the delay. The argument of proctor for respondent that the Bellota did not arrive for loading until her berth was in readiness to receive her cannot be sustained. The charter did not guard against any such contingency, but contemplated an agreement to pay demurrage if the vessel was not laden within the established lay days. It contained no limitation as to demurrage from time of arrival in her berth, or by the term "loading in turn." As it is, no custom as to delay in obtaining berth being shown, the delay was at the charterer's account. See Bailey v. Manufacturers' Lumber Co. (D. C.) 224 F. 806, 808, and cases cited. There was only one dock for loading, as contended, but, as there were two loading berths, the decision in The Edward T. Stotesbury (C. C. A.) 187 F. 111, would seem to favor libelant's viewpoint rather than respondent's. The term "ready to receive or discharge cargo," as used in the charter party, signifies readiness to load on the vessel's part at the port of arrival, and not on reaching the berth of loading. The Lake Yelverton (C. C. A.) 300 F. 47. Such, as already mentioned, was in contemplation of the parties when the contract became of force, and any delay was to be at the expense of the charterer.

It is next contended by proctor for respondent that the master and mate of the Bellota informed respondent's witness White, after the vessel arrived at Wilmington, that there was only a day and four hours of lay time at Port Tampa, out of the six lay days, and that he (White) had gone to Wilmington to expedite the discharge of the cargo; that, relying upon such statement of demurrage charge, he slacked up on running the cargo to the warehouse and

railroad cars, as had been done prior to receiving such statement, and ran it solely to railroad cars, thus easing up on the discharge. Both the captain and mate, however, swore that they did not remember making the statement, but, since there is corroboration of Mr. White's version, I incline to the view that the reported statements were made. Whether the statements are binding upon the vessel is questioned, but, as they tended to induce White to relinquish his activities in discharging the cargo to reduce the demurrage charge, I believe that libelant in fairness should be bound by the admission, in this relation, of the master. Admissions by the master of a vessel are frequently received against the ship. It is not a new doctrine. The Potomac, 8 Wall. (75 U. S.) 590, 19 L. Ed. 511; The Severn (D. C.) 113 F. 578; The Kaga Maru (D. C.) 18 F.(2d) 295.

It is next contended that the Bellota was not seaworthy on arrival at Port Tampa because the pumping apparatus used to keep hold No. 2 dry was disabled. It is testified that a new suction pipe was necessary, and that the repairs were completed by 11 o'clock a. m. March 16th. It is doubtful, in view of the master's and mate's deposition, whether any delay was caused by the repairs, though there is contrary evidence that this defect contributed to the delay in loading. However that may be, good faith, as heretofore indicated, requires that the ship be precluded from increasing the lay days by misleading statements of the master that merely one day and four hours would be claimed for demurrage.

It is therefore ruled that the delay for which respondent is liable with costs consists of one day and four hours of the lay days specified in the charter party, or a delay of two days at $1,000 per day. A decree may be entered for libelant for the amount stated, with costs.