## GEORGE E. WARREN CORPORATION v. BRITAIN S. S. CO.

### No. 3375.

Circuit Court of Appeals, First Circuit.
Dec. 6, 1938.

Whiting Willauer, of Boston, Mass. (Bingham, Dana & Gould, of Boston, Mass., on the brief), for appellant.

G. Philip Wardner, of Boston, Mass., for appellee.

Before BINGHAM and WILSON, Circuit Judges, and PETERS, District Judge.

WILSON, Circuit Judge.

This is an appeal from a decree of the District Court of Massachusetts in admiralty.

The libellant-appellee is a British corporation and is the sole owner of the British steamship Dartford. The respondent-appellant is a Massachusetts corporation, having its usual place of business in Boston in the Commonwealth of Massachusetts.

By a charter party dated April 15, 1935, the libellant-appellee chartered the steamship Dartford to the Amtorg Trading Corporation to carry a cargo of 6,000 tons, more or less, of coal from Mariupol, Nicolaieff or Theodosia in Russia at charterer's option to "one or two ports northern range U. S. A." * * * as ordered, on signing bills of lading, at certain prices per long ton as agreed upon.

The charterer exercised its option to load at Mariupol, also its option to load not less than 1,000 tons per day, all other conditions of the charter party to remain unchanged except the freight rates. The steamship Dartford arrived at Mariupol

on April 24, 1935. While its lay time did not begin until Thursday, April 25, at 6 A. M., it gave notice on the 24th of its readiness to load. At the rate of 1,000 tons per day, its lay time was 6 days and 1 hour. The vessel loaded 6,050 tons, which was completed on Sunday, April 28, at 5 P. M., so that the actual loading time was 3 days and 11 hours; but since under the charter party Saturday was a one-quarter holiday at Mariupol, and Sundays, official and local holidays under Clause 5 of the charter party were excepted from the lay time, whether used or not, therefore 6 hours on Saturday and the 17 hours used on Sunday were not lay time. Three days, 11 hours, less the 23 hours excepted on Saturday and Sunday, or 2 days and 12 hours, was the actual lay time used in loading.

The pertinent clauses of the charter party, viz., 5, 6, 7, 17, 18 and 21, provided as follows:

"5. Cargo to be loaded at the average rate of 600 tons per weather working day, Sundays, official and local holidays excepted whether used or not.

"Time to commence at 1 P. M. if notice of readiness to load is given before noon and at 6 A. M. next working day if notice given during office hours after noon.

"Saturdays and days preceding general or local holidays to count only as ¾ of a day whether used or not.

"On Monday and the day after general or local holidays time not to count until 8 A. M. whether used or not."

"6. At U. S. A. ports steamer to be discharged at the average rate of 800 tons per weather working day, Sundays, official and local holidays excepted whether used or not and cargo to be received by merchants from the steamer's hold free of expense to the steamer (free out).

"Time to commence at 1 P. M. if notice of readiness to discharge is given before noon and at 6 A. M. next working day if notice is given during office hours after noon."

"7. Ten running days on demurrage at the rate of £30 per day, or pro rata for any part of a day payable day by day to be allowed merchants altogether at ports of loading and discharging. Detention over demurrage payable at 10% above the charter party rate for demurrage."

"17. Time allowed for loading and discharging as per clauses 5 and 6 to be reversible or to be settled at each end if required by charterers.

"18. Lay days not to commence before 25th April 1935 unless with charterer's consent."

"21. Owners to pay to charterers dispatch money at half demurrage rate for all time saved in loading and/or discharging."

By an agreed statement of facts it appears that by clause 17 of the charter party the time allowed for loading and discharging as per clauses 5 and 6 was to be reversible, or was to be settled at each end and as required by the charterers. The charterer did not require the time for loading and discharging to be settled at each end; it, therefore, became "reversible," i. e., to the lay time allowed by the charter party to the charterer for discharging the cargo is to be added the number of days, hours and minutes for the "time saved" at the loading port. It is this time that is one of the matters in dispute between the parties.

The bill of lading issued by the master of the Dartford acknowledged receipt of 6,147,000 kilograms of coal on board at Mariupol to be delivered to the Amtorg Trading Corporation at New York or assignees at Boston. The latter corporation endorsed the bill of lading over to the respondent, which thereby became the consignee of the cargo, which consignee under its contract with the Amtorg Trading Corporation was obliged to make a settlement of freight and dispatch direct with the owner of the steamer.

The Dartford arrived at Boston on Saturday, May 25, 1935, and at 9 A. M. on Monday, May 27, gave notice of its readiness to discharge. However, it began discharging its cargo on Monday morning at 8 A. M., although by the terms of the charter party the Dartford's lay time did not begin until 1 P. M. and by the charter party the lay time allowed was 7 days, 13½ hours. The discharge of its cargo was completed at 8 P. M. on Friday, May, 31.

The difference between the parties as to the time saved at the loading port to be carried over and added to the lay time of the vessel at the port of discharge is whether by "time saved" is meant lay days not used in loading, or, if there be a difference, the time saved the ship in getting away from the loading port. If, as contended by the appellant, although the charterer had a right to retain the ship at

Mariupol for loading its full lay time of 6 days and 1 hour, which would have kept the ship there from April 25th at 6 A. M., when its lay time began, until Monday, May 6, at 1 P. M. when it ended, only 3 days and 13 hours of working time remained of which the ship could have availed itself in sailing time, if Sundays, official and local holidays and other excepted time under the charter party are all excepted.

The appellee contends that the time saved at the loading port of 3 days and 13 hours, when added to the lay time allowed for unloading of 7 days and 13½ hours, equals 11 days and 2½ hours, weather permitting, and exclusive of Sundays, official and local holidays, in which to discharge the vessel. Eleven days and 2½ hours from 1 P. M. on Monday, May 27, when the lay time at Boston began, excluding May 30 and the two Sundays, June 2 and 9, ended on Monday, June 10, at 3:30 P. M., or a total lay time saved at the loading and discharging port of 9 days and 19½ hours.

The appellant contends since the Dartford arrived at Boston on Saturday, May 25, and the time for discharging began on Monday at 1 P. M. May 27, and by the charter party the time allowed for discharging was 7 days, 13 hours and 30 minutes, which, together with 8 days and 8 hours, the time, according to a time sheet signed by the master without protest at the loading port, which it is claimed was saved to the vessel at the loading port, the time allowed for discharging expired on June 20, 1935, at 10:30 A. M., or a total lay time saved at the discharging port of 15 days, 21 hours and 30 minutes. In arriving at the date of June 20 as the expiration of the vessel's lay time at Boston, the appellant included Sundays and official and Saturday half holidays, which the appellee claims should be excepted under the charter party.

According to Clause 21 of the charter party and the assignment to the consignee, the owner was to pay the consignee dispatch money at the rate of £15 per day, which, for 9 days and 19½ hours, amounts to £147, 3s, 9d. The difference between this sum and the freight money retained by the appellant is £146, 17s, 6d, or the equivalent of $727.03 at the rate of exchange then current, which the District Court held the libellant was entitled to recover with interest and costs.

If the theory of the appellant is the correct construction of the charter party, that to the lay time allowed at the discharging port of 7 days, 13 hours and 30 minutes, should be added 8 days and 8 hours, the time stated by the master in the time sheet as the time saved the ship at the loading port, or 15 days, 21 hours and 30 minutes, which, if the Sundays and official holidays and Saturday half holidays be added, would bring the period for discharging to June 20 at 10:30 A. M., or a total time saved to the ship, inclusive of Sundays, official holidays and Saturday half holidays, of 19 days, 14 hours and 30 minutes, which at £15 per day amounts to £294, 1s, 5d.

Since time saved is not definitely defined in the charter party, the time saved at the loading and discharging ports must be left to a construction of the charter party, and the construction to be placed upon the charter party in this instance must be determined by the law of England, the lex loci contractus, except where the place of performance is in a foreign country. United States v. North Carolina, 136 U.S. 211, 222, 10 S.Ct. 920, 34 L.Ed. 336; London Assurance v. Companhia de Moagens, 167 U.S. 149, 161, 17 S.Ct. 785, 42 L.Ed. 113; Gaston, Williams & Wigmore of Canada, Ltd., v. Warner, 260 U.S. 201, 203, 43 S.Ct. 18, 67 L.Ed. 210.

The English cases of Laing v. Hollway, 1878, 3 Q.B.D. 437; The Glendevon, [1893] P.D. 269; Nelson Sons, Ltd. v. Nelson Lines Liverpool, [1907] 2 K.B. 705; In re Royal Mail Steam Packet Company v. River Plate Steamship Company [1910] 1 K.B. 600; Mawson Steamship Company v. Beyer, [1914] 1 K.B. 304; and Rederiaktiebolaget-Transatlantic v. La Compagnie Francaise Des Phosphates De L'Oceanie, Court of Appeal, 1926, 32 Com.Cases, 126, are cited as evidence of the construction of the terms of a charter party such as the one in this case. It is difficult, however, to lay down a rule of construction from these cases that can be held to be generally applicable, since the decisions in several instances are based on differing language in the charter parties.

The English court in the Glendevon Case, supra, held: "The question presented was whether a Sunday and a Fete Day allowance during the lay period should be included in calculating dispatch. The Court held that they should not be included, and

that dispatch was payable only for working days saved."

In the case of Nelson Sons, Ltd. v. Nelson Lines Liverpool, supra, an arbitrator, on the authority of the Glendevon Case, held that for the purpose of dispatch money the charterers could only save days on which they could require the ship to work, and not for Sundays and holidays. This decision was affirmed by the Divisional Court and was then heard by the Court of Appeal which reached the same conclusion by a majority of two to one. Buckley, L. J., speaking for the majority, said: "By finishing their loading on the Saturday the charterers saved the shipowners delay, but there was no day saved in loading so far as Sunday was concerned. The relevant words are 'seven days to be allowed for loading' and 'for each clear day saved in loading' the charterers shall be paid. In this language no trace is to be found of saving delay to the ship. The payment is to be made for any saving effected in the seven days allowed for loading. This conclusion is in accordance with the decision in The Glendevon Case, which in my opinion, was rightly decided."

In Mawson Steamship Company v. Beyer, the court said, at page 312 in referring to the cases, supra, and to the effect of the different language used in the cases, and the order of arrangement of the provisions of the charter party:

"Accepting, however, as I must do, the authorities as they stand, I think I may with safety say that the conclusions to be drawn from them are:

"1. Prima facie the presumption is that the object and intention of these despatch clauses is that the shipowners shall pay to the charterers for all time saved to the ship, calculated in the way in which, in the converse case, demurrage would be calculated; that is, taking no account of the lay day exceptions; Laing v. Hollway, and In re Royal Mail Steam Packet Co. v. River Plate Steamship Co.

"2. *This prima facie presumption may be displaced and is displaced*, where either (I) lay days and time saved by despatch are dealt with in the same clause and demurrage in another clause: The Glendevon; (II) lay days, time saved by despatch and demurrage are dealt with in the same clause, but upon the construction of that clause *the Court is of opinion, from the collocation of the words or other reason, that the days saved are referable to and*

*used in the same sense as the lay days as described in the clause,* and are not used in the same sense as days lost by demurrage: Nelson & Sons v. Nelson Line, Liverpool." (Italics supplied.)

Since in the present case lay days, dispatch and demurrage are dealt with in separate clauses, the Mawson Case and the Rederiaktiebolaget-Transatlantic Case, Court of Appeal 1926, 32 Com.Cases, 126, which are the latest cases called to our attention, should only, so far as applicable, be followed. We are, therefore, of the opinion that the difference between the working time actually used in loading, and the end of the lay period allowed for loading, except Sundays, official and Saturday half holidays, or 3 days and 13 hours, is the number of lay days to be added to the lay days allowed for discharging.

There appears to be no question as to the effect of the term "reversible" in a charter party, which means that the time of loading and discharging are to be settled at the discharging port. The question in this case is the method of computing the time saved in loading and discharging.

The master signed a time sheet without protest, showing that the time saved in loading was 8 days and 8 hours; and upon the completion of the discharge, the vessel's agent drafted a time sheet, which the master signed under protest, which shows a total dispatch, i. e. time saved at loading and discharging ports of 19 days, 14 hours and 30 minutes; but the time sheets signed by the master stating the time saved in loading and also in discharging, especially if signed under protest, could not vary the provisions of the charter party. Gracie v. Palmer, 8 Wheat. 605, 639, 5 L.Ed. 696; Armour & Co. v. Fort Morgan Steamship Company, Ltd., 270 U. S. 253, 46 S.Ct. 212, 70 L.Ed. 571; Love & Stewart, Ltd. v. Rowton Steamship Company, Ltd., [1916] 2 A.C. 527.

This is not a case where the time sheet signed by the master was intended as a settlement of the whole question of the amount of dispatch money due the owner in accordance with the rights of the parties, as in the case of South American Metal Company v. Kjoge et al., 4 Cir., 12 F.2d 562, 566. Such a time sheet, unless for the purpose of effecting a settlement of the amount of dispatch money due the owner, cannot be regarded as altering the rights of the parties under the charter

party, as the ship owner could not be bound by the action of the master to such an extent without authority.

One other question is in dispute which affects the amount of dispatch due the charterer or his consignee; viz: whether in Boston Saturday is a half holiday. It is agreed that it is not made a half holiday by statute in Massachusetts, though by custom or common consent many business houses close on Saturday afternoon. If it is to be determined by English law, the case of Love & Stewart, Ltd., v. Rowton Steamship Company, Ltd., supra, page 536, appears to be decisive, in which case the phrase, "Sundays, general or local holidays (unless used) in both loading and discharging are excepted", and the court held that Saturday afternoons were not included within the phrase, "general or local holidays", which did not include a half holiday; but we think this question is to be decided by local law. Pool Shipping Company, Ltd. v. Samuel, 3 Cir., 200 F. 36; Holland Gulf Steamshipping Co. v. Hagar, D.C., 124 F. 460, 463. It is significant that the charter party in terms made no reference to Saturday, except to expressly except it as a one-fourth holiday, which we think applied only to Russian ports where one of the parties to the charter party was familiar with the local law.

The decree will be that the libellant recover of the respondent the sum of $727.03, with interest to be computed by the clerk from June 1, 1935, together with costs of the District Court and of this court.