**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1897-16T4

KEVIN DUGAN,

    Plaintiff-Appellant,

and

ROMAN ZIELONKA,

    Plaintiff,

v.

BEST BUY CO. INC., and
GARRETT HETRICK,

    Defendants-Respondents.

_____

Argued May 31, 2017 — Decided August 11, 2017

Before Judges Vernoia and Moynihan (Judge Vernoia concurring).

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No.  L-1946-16.

Patricia A. Barasch argued the cause for appellant (Schall & Barasch, LLC, attorneys; Ms. Barasch, on the briefs).

Lynn A. Kapelman argued the cause for respondents (Seyfarth Shaw LLP, attorneys; Ms. Kapelman, Howard M. Wexler and Maria Papasevastos, of

counsel and on the brief).

PER CURIAM

Plaintiff, Kevin Dugan, appeals from the December 6, 2016 order granting defendant, Best Buy's motion to compel arbitration and dismiss plaintiff's suit. He argues the judge improperly granted the motion because plaintiff did not agree to be bound by the arbitration policy introduced by defendant; and that claims relating to the termination of his employment are not arbitrable under the terms of the policy.

We agree that plaintiff did not assent to the policy and reverse.

The existence of a valid and enforceable arbitration agreement poses a question of law; our standard of review of an order granting a motion to compel arbitration is de novo. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). The "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We, therefore, construe the arbitration contract "with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011).

Defendant hired plaintiff in June 2000 as an assistant manager. He was promoted to general manager in 2003.

On February 4, 2016, plaintiff logged on to an eLearning program utilized by defendant to introduce employees to an arbitration policy defendant sought to implement on March 15, 2016. The eLearning module consisted of four screens.

The first screen, titled "Employee Solutions Process," read:

> Best Buy is committed to a welcoming, inclusive environment where employees come to work every day to do what they enjoy doing.
>
> From time to time you may encounter a concern that, if left unresolved, could negatively affect your employment experience. It [i]s Best Buy's goal to resolve all these [i]ssues and, in fact, has a clear well-established [i]nternal process to do just that.

The second screen, bearing the same title, outlined a progressive system for employees to address employment-related concerns, starting with discussions with the employee's manager, next to human resources personnel, and then to the Employee Relations (ER) team. The text continued, "Under the Peer Review Program, eligible employees may have certain involuntary terminations reviewed, first by an ER manager and, if still not satisfied by the outcome, by a panel of managers and peers." If those steps did not address the concern, employees could "choose to file a formal legal claim." The screen text concluded, "Effective March 15, 2016, you will bring that claim in arbitration, rather than in court."

A note at the bottom of both the first and second screens directed the employee to a link to a site at which "[a]dditional details" could be found.

The heading of the third screen was: "Why is Best Buy Implementing an Arbitration policy?" The text that followed suggested that the arbitration process was more favorable than court proceedings.

The last screen read:

> As with any other Best Buy policy, by remaining employed, you are considered to have agreed to the policy. The purpose of the eLearning is to ensure you read and understand the policy.
> Employees who do not take this eLearning are still subject to the policy.
>
> I have read and understand the Best Buy Arbitration Policy that takes effect on March 15, 2016.

Just below that paragraph, the words, "I acknowledge," appeared in a box that was intended to be mouse-clicked by the reader. A link at the bottom of the page allowed the reader the opportunity to "read and review" the policy and "FAQs" - frequently asked questions.

Plaintiff clicked on the "I acknowledge" box without reading the policy. He was also responsible, as general manager, to ensure his staff completed the eLearning module.

A-1897-16T4

The policy went into effect on March 15. Plaintiff was terminated on April 5.[1] On September 16, plaintiff filed an age discrimination action against defendant under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Those claims are, according to the terms of the motion judge's order, subject to arbitration.

The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16, and the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, are premised on policies favoring arbitration as a means of resolving disputes. Atalese v. U.S. Legal Servs, Grp., 219 N.J. 430, 440 (2014), cert. denied, 135 S. Ct. 2804, 192 L. Ed. 2d 847 (2015). "Arbitration's favored status does not mean that every arbitration clause, however phrased, will be enforceable." Id. at 441. "Although it is firmly established that the FAA preempts state laws that invalidate arbitration agreements, the FAA specifically permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles; therefore, an arbitration clause may be invalidated

---

[1] The reason for the termination is in dispute. Plaintiff alleges he was fired because of his age, and complaints he lodged about discriminatory comments made by his supervisor regarding plaintiff's age. Defendant avers plaintiff was fired for an inappropriate comment plaintiff made to an employee (according to plaintiff's complaint, it was to an employee; the motion judge found the comment was made to a customer). We do not address the merits of those claims.

'upon such grounds as exist at law or in equity for the revocation of any contract.'" Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002) (quoting 9 U.S.C.A. § 2).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Atalese, supra, 219 N.J. at 442 (citation omitted). An employee's waiver of the right to sue in court "must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim." Leodori v. CIGNA Corp., 175 N.J. 293, 302, cert. denied, 540 U.S. 938, 124 S. Ct. 74, 157 L. Ed. 2d 250 (2003). Such a waiver, the Court found, "results only from an explicit, affirmative agreement that unmistakably reflects the employee's assent." Id. at 303; see also Atalese, supra, 219 N.J. at 442-43.

Since assent requires a full understanding of the terms of the agreement and the rights being waived, id. at 442, we must first determine if defendant provided sufficient notice to plaintiff. "The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993).

The terms of defendant's arbitration policy satisfactorily alert employees they are waiving their right to sue in court. The

policy, on page one, plainly warns that any disputes governed by the policy terms "will be decided by an arbitrator in arbitration and not by way of a court or jury trial."[2] That warning is repeated four pages later, and the policy spells out the arbitration process.

The policy does not express that employees are "waiving" their right to sue.[3] The policy, presented as a fait accompli, requires employees to arbitrate as a "mandatory" condition of employment; "by becoming or remaining employed after the effective date of this Policy, employees agree[d] to th[e] Policy's terms." The policy makes no mention of any "right" of an individual to sue in court. Although "[t]he absence of <u>any</u> language in the arbitration provision that plaintiff was waiving [his] statutory right to seek relief in a court of law renders the provision unenforceable," <u>Atalese</u>, <u>supra</u>, 219 <u>N.J.</u> at 436 (emphasis in original), "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." <u>Id.</u> at 444. The Court cited a few examples of policy language that adequately

---

[2] Although plaintiff claims he did not read the policy, he acknowledged that he did when he clicked the box on the last page of the eLearning module.

[3] The policy mentions waivers only in provisions related to claims against the defendant "on a class or collective basis" or in California Private Attorney General Act representative actions.

advised a party that the longstanding right to sue was being relinquished, one of which provided:

> Instead of suing in court, we each agree to settle disputes (except certain small claims) only by arbitration. The rules in arbitration are different. There's no judge or jury, and review is limited, but an arbitrator can award the same damages and relief, and must honor the same limitations stated in the agreement as a court would.
>
> [Id. at 445 (quoting the arbitration clause in Curtis v. Cellco Partnership, 413 N.J. Super. 26, 31 (App. Div.), certif. denied, 203 N.J. 94 (2010)].

The language in defendant's policy similarly notified employees of the distinction between resolution of a conflict in arbitration and in a court. Although the policy does not include an explicit "waiver," it does advise that a dispute will not be handled in a court, and explains the arbitration process. The terms adequately inform employees that, by agreeing to the arbitration policy, they are waiving their right to access the court to resolve disputes.

The terms of the agreement, however, are unenforceable unless plaintiff's assent to its terms is established by either his signature on the agreement or "some other explicit indication that [he] intended to abide by that provision." Leodori, supra, 175 N.J. at 305. It is undisputed that plaintiff did not mechanically sign any document. That is a "significant factor in determining

A-1897-16T4

whether" an agreement was reached.  Ibid.  A handwritten signature "is the customary and perhaps surest indication of assent."  Id. at 306-07.

Plaintiff did click on the box acknowledging that he read and understood the policy.  We have recognized that a party can assent to the terms of a contract by electronically clicking on a website box.  See Caspi v. Microsoft Network, LLC, 323 N.J. Super. 118, 122 (App. Div.)(recognizing assent to a forum selection clause can be established by a party clicking on a block labeled, "I Agree"), certif. denied, 162 N.J. 199 (1999).  Merely acknowledging receipt of a policy, however, does not indicate assent to the policy. Leodori, supra, 175 N.J. at 307.  We have also held that by "obtaining the employee's signature on a rider, which stated only that the employee 'received' and 'underst[ood]' the contents of the company handbook or rules or regulations, the employer cannot fairly contend the employee 'agreed' to a waiver of the right to sue that might be found within those materials."  Morgan v. Raymours Furniture Co., 443 N.J. Super. 338, 343 (App. Div.) (alteration in original)(citations omitted), certif. denied, 225 N.J. 220, cert. denied, 137 S. Ct. 204, 196 L. Ed. 2d 132 (2016). Plaintiff's mouse-click on the acknowledgment box did not manifest his assent to the policy, only that he read and understood the policy.

It has been over thirteen years since our Supreme Court advised employers of an easy method to avoid the problem defendant now faces:

> [W]ith minimal effort, employers can revise the language to include an indication that the recipient has received and agreed to an arbitration policy. The acknowledgment form need not recite that policy verbatim so long as the form refers specifically to arbitration in a manner indicating an employee's assent, and the policy is described more fully in an accompanying handbook or in another document known to the employee.
>
> [Leodori, supra, 175 N.J. at 307.]

Defendant could have firmly established plaintiff's assent by simply adding the words "and agree to the terms of the policy" to the acknowledgment box. Ibid.

The fact that plaintiff knew of the policy, and his status as a general manager who was tasked with having other employees complete the eLearning module, does not establish his assent to the policy. Id. at 306; Garfinkel v. MOGA, 168 N.J. 124, 136 (2001). His knowledge of the policy and employment status may be factors related to his understanding of the policy, but do not indicate his agreement to same.

The terms of the policy provided employees agreed to be bound "[b]y remaining employed" after its effective date of March 15,

2016. The only possible indication of plaintiff's assent, therefore, was his continued employment.

"[C]ontinued employment has been found to constitute sufficient consideration for certain employment-related agreements." Martindale v. Sandvik, 173 N.J. 76, 88 (2002); Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 265-66 (App. Div.), certif. denied, 165 N.J. 527 (2000). Under the facts of this case, plaintiff's continued employment did not amount to an "explicit, affirmative agreement that unmistakably" reflected his assent to the arbitration policy. Leodori, supra, 175 N.J. at 303.

Our holding in Jaworski v. Ernst & Young U.S., 441 N.J. Super. 464 (App. Div.), certif. denied, 223 N.J. 406 (2015), upon which defendant relies in arguing that continued employment reflected plaintiff's consent, is distinguishable. The policy in this case contained language similar to that in Jaworski, providing that the employee's continued employment after the effective date of the policy signified the employee's agreement to the terms requiring arbitration. In Jaworski, however, the employee continued his employment for five years after the effective date of the policy

11

until his termination.[4] Plaintiff, by remaining employed for three weeks after its effective date, did not indicate his assent to the policy; employment for that brief period does not meet the high standard required to establish an unambiguous waiver of plaintiff's right to sue. Plaintiff did no more than he did every other day during his tenure with Best Buy - he showed up for work. While remaining employed for five years may reflect an employee's acquiescence to employment terms, plaintiff's continuation of employment for three weeks was not an explicit, unmistakable acceptance of the policy.[5]

The policy was offered on a take-it-or-leave it basis.[6] The policy provides that it "is a mandatory condition of initial and continuing employment." Employees who did not take the eLearning module were, according to the fourth screen of the training course, still subject to the terms of the policy. Defendant's position,

---

[4] The policy was actually a revision to one that was initiated in 2002, id. at 468, before the employee signed his original employment agreement in 2004, id. at 473, and revised several times in 2006 and 2007, id. at 470-71.

[5] We are careful not to conflate the concept of continued employment as sufficient consideration for an agreement with continued employment as an indication of explicit assent to an agreement.

[6] It is clear defendant did not intend to negotiate the terms of the policy; although we recognize negotiation of an arbitration clause is not required. Leodori, supra, 175 N.J. at 307.

if adopted, does not reasonably allow enough time for an objecting employee to find another situation, especially in circumstances such as these. This is not the case where an applicant for employment could simply walk away upon disagreeing with a proposed policy. See Martindale, supra, 173 N.J. at 91 (holding a prospective employee was not forced to sign an employment application containing an arbitration clause; also indicating the prospective employee had an opportunity to ask the employer for changes). Plaintiff had worked for defendant for almost sixteen years. He was forty-six years old. The choice given by defendant to "leave it" if an employee did not agree to the policy "amount[ed] to no choice at all." Id. at 103 (Stein, J., dissenting)[7] (quoting Cooper v. MRM Investment Co., 199 F. Supp. 771, 778 (M.D. Tenn. 2002)). It is unreasonable to expect an established employee to walk away from a career, without any prospects, when an employer unilaterally presents a new agreement. Plaintiff's choice to stay at his job for the short period did not indicate his agreement to the policy.

---

[7] The Court was considering whether an agreement was a contract of adhesion. We do not undertake such an analysis here. Nor do we consider whether an agreement was the result of coercion or duress. We consider only whether plaintiff assented to the policy, and whether there was an agreement.

Plaintiff's conduct was insufficient to establish his assent to the defendant's arbitration policy. In light of our decision that no agreement to arbitrate was reached, we need not address the scope of the arbitration agreement. Because of our disposition, we need not address appellants' remaining arguments. To the extent we have not explicitly addressed any other argument a party has advanced, it is because the argument is without sufficient merit to require discussion in a written opinion. See R. 2:11-3(e)(1)(E). We reverse the entry of the order compelling arbitration and dismissing plaintiff's complaint. The matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

**VERNOIA, J.A.D., concurring.**

I join in the reversal of the order dismissing the complaint and directing that plaintiff's claims be resolved in arbitration, but write separately because I respectfully disagree with the portion of my colleague's thoughtful opinion suggesting that plaintiff could not have assented to the arbitration policy because he continued his employment with defendant for only three weeks following the policy's promulgation.

An arbitration agreement that includes a waiver of an employee's right to assert causes against an employer in court requires "an explicit, affirmative agreement that unmistakenly reflects the employee's assent." Leodori v. Cigna Corp., 175 N.J. 293, 303 (2001), cert. denied, 540 U.S. 938, 124 S. Ct. 74, 157 L. Ed. 2d 250 (2003). An employee's "signature to an agreement is the customary and perhaps surest indication of assent," but where an employee has not signed an arbitration agreement, assent may be inferred based on "some other unmistakable indication that the employee affirmatively . . . agreed to arbitrate" the employee's claims. Id. at 306-07.

In Jaworski v. Ernst & Young US LLP, 441 N.J. Super. 464 (App. Div.), certif. denied, 223 N.J. 406 (2015), we recognized that under certain circumstances an employee may manifest binding

assent to an arbitration agreement by continuing employment with the employer. In <u>Jaworski</u>, the employer promulgated an arbitration program stating that "[a]n [e]mployee indicates his or her agreement to the [p]rogram and is bound by its terms and conditions by beginning or continuing employment with [the employer] after" a designated effective date. <u>Id.</u> at 474. We found the plaintiff was bound by the arbitration program because he continued to work for the defendant following the effective date, "thus manifesting his intent to be bound pursuant to the unambiguous and specifically-emphasized terms of the [arbitration] [p]rogam." <u>Ibid.</u> Our finding was supported by the clear language of the arbitration program - that the plaintiff assented to agreement by continuing employment beyond the designated effective date.

To be sure, we also noted that the plaintiff continued to work for the defendant for five years after the effective date. <u>Ibid.</u> However, I disagree with my colleague that <u>Jaworski</u> requires a lengthy period of continuing employment, or anything beyond the mere commencement of continued employment, to establish an employee's assent to an arbitration agreement that otherwise clearly and expressly provides that an employee manifests assent by continuing employment. Such a holding is not supported by our decision in <u>Jaworski</u>, and contravenes a basic principle guiding our interpretation of contracts: we will not "rewrite a contract

for the parties better than or different from the one they wrote for themselves." <u>Kieffer v. Best Buy</u>, 205 <u>N.J.</u> 213, 223 (2011).

My reading of <u>Jaworski</u> does not require an affirmance of the court's order. As noted, in <u>Jaworski</u> the policy at issue unambiguously advised the plaintiff that his continuing employment constituted assent to the arbitration program and an agreement to be bound by its terms. <u>Jaworski</u>, <u>supra</u>, 441 <u>N.J. Super.</u> at 474. In contrast, the language used by defendant here did not unambiguously advise plaintiff that he assented to the arbitration policy by continuing his employment. The fourth screen of the eLearning program vaguely stated only that defendant would "consider" an employee's continued employment as the employee's consent to be bound by the policy.

Unlike the policy language in <u>Jaworski</u>, defendant's eLearning screen described only how defendant would perceive an employees' continued employment, and did not clearly inform plaintiff that his continuing employment constituted his agreement to the arbitration policy. It is for that reason, and not because plaintiff's continuing employment lasted for only three weeks beyond the policy's putative effective date, that I concur in the conclusion that plaintiff's continued employment did not establish the explicit and unmistakable assent required to support the motion court's decision. <u>See</u> <u>Leodori</u>, <u>supra</u>, 175 <u>N.J.</u> at 303.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

3

A-1897-16T4